E-FILED
Friday, 16 December, 2005  07:24:16 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　Plaintiff,<br><br>v.<br><br>ALBINO TEPEHUA-XIQUE,<br><br>　　　Defendant | No.: 05-20032 |

**SENTENCING COMMENTARY**

　　NOW COMES the Defendant, ALBINO TEPEHUA-XIQUE, and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and pursuant to 18 U.S.C. § 3553 respectfully submits this Sentencing Commentary.

　　Mr. Tepehua-Xique submits that the following information sets forth mitigating factors pursuant to § 3553. The Supreme Court in *Coon v. United States*, 518 U.S. 81 (1996), stated that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 518 U.S. at 113. "No limitation shall be placed on the information" a court "may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

I.　　*Education and Vocational Skills, Family Ties and Responsibilities*

Mr. Tepehua-Xique was born and raised in San Pedro Cholula, Puebla, Mexico. His family lived in deep poverty. Even when he was in elementary school, he had to rise very early to work in the family business of making bricks. He left school after the sixth grade, in part because his family could use the extra money from his full-time employment, but principally because they could not afford the secondary school expenses and fees, for such things as books and uniforms.

Like others in his family, including siblings and his father, Mr. Tepehua-Xique has worked for a number of years, on different occasions, in the United States. The illegality of his entries and periods of residency in the United States is not in dispute, and there is no suggestion that his employments in the United States were illegal. However, his principal purpose for working in the United States was to send remittances home to family members who remained in Mexico. This extra income has been of great value to his family. It has enabled them to get out of debt, repaying thousands of dollars that they owed — much of which had been accrued in medical treatment of Mr. Tepehua-Xique's younger brother, who was gravely ill with kidney disease for a number of years, and eventually died of his illness. The work of Mr. Tepehua-Xique and others in his family have also permitted his family to build a new house — an improvement on the older one, in that the bricks are held together by mortar, instead of being loosely stacked on each other. Even more importantly, the remittances have enabled Mr. Tepehua-Xique's four younger sisters to remain in school past their primary years, with the prospect of completing their secondary education.

Since shortly after his return to the United States in 2003, Mr. Tepehua-Xique has been accompanied by his wife, Mariana, and their children, the youngest of whom is an American

citizen. His earnings (supplemented by Mariana's, from time to time) have been sufficient to support his immediate family, as well as to continue sending money back to Mexico.

Even the most unhealthy circumstances of life, of course, neither justify nor completely excuse an offense, but *are* relevant as mitigation, as evidence that "in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability," *Black's Law Dictionary* 1002 (6th ed. 1990) (defining "[m]itigating circumstances"), or as "[a] fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce . . . the punishment [in a criminal case]." *Black's Law Dictionary* 236 (7th ed. 1999). In a significant sense, of course, Mr. Tepehua-Xique's offense, having been committed once before, and being a continuing act engaged in over a number of years, cannot reasonably be represented as "aberrant." At the same time, Defendant submits to the Court that this is not a wrongdoing he has gratuitously sought out. In healthy circumstances, he would have remained in his home town, living, learning, and working, in the company of family and the familiar, rather than making a difficult, dangerous journey to a strange, and sometimes hostile, land. Economic desperation impelled Mr. Tepehua-Xique on a journey he would not otherwise have undertaken. That does not make his actions right, nor excuse them, but it does suggest that, on the scales of culpability, Mr. Tepehua-Xique's offense should not be regarded as a cavalier flouting of the commands of the law, but as something closer to the reluctant choice of a man possessed of the urgent necessity to help his family as best he could, by the sweat of his brow.

## II. Mr. Tepehua-Xique Should be Sentenced Under the Low End of the Guidelines

A sentence under the low end of the guidelines will provide "just punishment," 18 U.S.C. § 3553(a)(2)(A), but not more than necessary. Such a sentence will be sufficient, but not greater than necessary, to reflect the seriousness of this offense, to promote respect for the law, and to afford adequate deterrence. 18 U.S.C. § 3553(a)(2)(A), (B).

The advisory guideline range are too harsh, and do not take into consideration the mitigating factors of Mr. Tepehua-Xique's life. Because the statute requires that the sentence be sufficient to do that, but also not greater than necessary, the Court in the end must ask whether the guideline range, with the concomitant cost to taxpayers and loss of opportunity for Mr. Tepehua-Xique to care for his loved ones, including his children, will suit that purpose, while a lesser incarceration time will not.

There is much clarity to be found concerning sentencing in this case if one frames, in basic terms, what ultimate outcome the government and the Court hope to obtain. That desired outcome is surely this: That Mr. Tepehua-Xique, upon deportation to his home, will not return to the United States, but will thereafter remain in Mexico, pursuing his family's livelihood by working *there*. To what extent, then, will various sentencing alternatives advance or undermine that outcome? It is surely obvious that a lengthy sentence will have a greater effect of depriving his family of the support of his earnings, rather than deterring future misconduct. Nothing will make Mr. Tepehua-Xique's return to the United States more likely than his finding, upon release from a long period of incarceration, that his family is destitute, and desperately in need of a better income than can be found in San Pedro Cholula. Both justice and government policy will best be served by a sentence that sees Mr. Tepehua-Xique on his way home, as quickly as possible.

Respectfully Submitted,

ANTOINE BRADFORD, Defendant

RICHARD H. PARSONS
Federal Public Defender

BY:   s/Tiffani D. Johnson
       _____
       TIFFANI D. JOHNSON, Bar No. 6278909
       Assistant Federal Defender
       300 West Main Street
       Urbana, Illinois 61801
       Phone: (217) 373-0666
       Fax: (217) 373-0667
       Email: tiffani_johnson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all of the parties in this matter.

       s/Tiffani D. Johnson
       _____
       TIFFANI D. JOHNSON, Bar No. 6278909
       Assistant Federal Defender
       300 West Main Street
       Urbana, Illinois 61801
       Phone: (217) 373-0666
       Fax: (217) 373-0667
       Email:tiffani_johnson@fd.org

I:\Johnson\CLIENTS\Tepehua\Tepehua A - 3553 Commentary.wpd